UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| CSA OCEAN SCIENCES, INC., | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| INTEGRAL CONSULTING, INC., | ) |
| | ) |
| Defendant | ) |
| | ) |
| | ) |

**COMPLAINT FOR DAMAGES**

TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA:

NOW INTO COURT, through undersigned counsel, comes Plaintiff, CSA Ocean Sciences, Inc. ("CSA"), who respectfully submits this Complaint for Damages against Defendant, Integral Consulting, Inc. ("Integral"), and further respectfully avers as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. This is an action for breach of contract damages, with CSA as Lessor, and Integral as Lessee. See Equipment Rental Agreement, attached hereto as Exhibit "A."

2. Plaintiff, CSA, is a Florida corporation with its principal place of business located in Florida, and at all relevant times hereto, was authorized to transact business in the State of Florida.

3. Upon information and belief, Defendant, Integral, is a Colorado corporation with its principal place of business in Louisville, Colorado.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1332 because complete diversity of citizenship exists between the parties and because the amount in controversy is greater than the minimum jurisdictional amount.

5.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1333.

6.     Venue is proper in this District pursuant to a forum selection clause in the terms and conditions of the contract between the parties. See Exhibit "A," ¶ 17.

## FACTS

7.     Integral contracted with CSA for the lease of a Deep Water Sediment Profile System, along with its full kit, including a Transponder ("SPI" or "Rental Equipment"). See Exhibit "A," p. 4.

8.     The terms of the lease were memorialized in the Equipment Rental Agreement ("Rental Agreement," "Contract," or "Lease"). See Exhibit "A."

9.     The Contract shows CSA as the Lessor, and Integral as the Lessee. See Exhibit "A," p. 1.

10.    The Contract was executed by both parties on January 16, 2024. See Exhibit "A."

11.    The Contract contains the terms and conditions of the lease of the Rental Equipment. See Exhibit "A," which contains the following language:

> 2. *Rental charges shall apply from the time the Rental Equipment is dispatched from Lessor's facility for delivery to Lessee and continue until the Rental Equipment is received by Lessor at the facility from which it was dispatched unless otherwise specifically agreed in writing by Lessor.*
>
> 5. ***Lessee agrees to pay all rental fees, delivery and prep charges, within 30 days from invoice by Lessor without any right of set-off, abatement or Counterclaim.***
>
> 7. *Lessee agrees and acknowledges that except set forth under Paragraph 4 of this Agreement, the Lease of Rental Equipment is on an "As Is" and "Where Is" basis and is without warranty or representation, either expressed or*

2

*implied as to (i) condition, design, operation, fitness for purpose or use, or merchantability.*

10. *At the end of the term of the rental, Lessee shall return the Rental Equipment to Lessor in good and safe working condition and appearance, reasonable wear and tear excepted. If Lessee does not return the Rental Equipment in such condition, then Lessor may, without waiving other remedies available under this Agreement, make such repairs or replace any component parts as it deems necessary to restore the Rental Equipment to such condition and Lessee shall promptly reimburse Lessor upon demand all expenses associated with such restoration.*

11. *Lessee assumes and bears the entire risk of loss and damage to the Rental Equipment from any and every cause whatsoever. No loss or damage to the Rental Equipment or any part thereof shall alter or void any obligation of Lessee under this Lease, which shall continue in full force and effect through the term of the Lease. In the event of loss or damage of any kind whatsoever, Lessee shall promptly report such loss or damage to Lessor and*
    a. *At Lessor's sole and absolute discretion, if the extent of the loss or damage to the Rental Equipment is so great that repairs will not satisfactorily place the Rental Equipment back in its same condition and working order, then the Rental Equipment will be a total loss. Lessee agrees to pay Lessor, the Full Replacement Value (as stated in Attachment "A"), plus any accrued, unpaid rental payments and any other sums due under this Agreement no later than thirty (30) days from the date of the loss.*
    b. *If Lessor deems the loss or damage is not a total loss, then Lessee shall promptly restore the Rental Equipment to good and safe working condition and repair any damage to the sole satisfaction of Lessor, including without limitation, replacing all parts, components or materials of the Rental Equipment as have been damaged or are subject of the loss using manufacturer approved replacement parts, components or materials of equal or greater value. If Lessor deems that the Rental Equipment was not returned in satisfactory condition, then Lessor may, at its option, repair the Rental Equipment and Lessee agrees to pay Lessor for all costs incurred in order to place Rental Equipment in good repair, condition and working order.*

12. *Lessee shall procure and continuously maintain and pay for all risk insurance against loss of and damage to the Rental Equipment for not less than the Full Replacement Value of the Equipment, naming Lessor as loss payee, and combined public or general liability and property damage insurance with a minimum limit of USD $1,000,000, naming "Lessor OCEAN SCIENCES INC" as additionally named insured and a payee. The*

3

*insurance shall be in such form and with such company or companies as shall be reasonably acceptable to Lessor, shall provide at least thirty (30) days advance written notice to Lessor of any cancellation, change or modification, and shall provide primary coverage for the protection of Lessee and Lessor without regard to any other coverage carried by Lessee or Lessor protecting against similar risks. Lessee shall provide Lessor with an original policy or certificate evidencing such insurance. Lessee hereby appoints Lessor as Lessee's attorney in fact with power and authority to do all things, including, but not limited to, making claims, receiving payments and endorsing documents, checks or drafts necessary or advisable to secure payments due under any policy of insurance required under this Agreement.*

13. ***Lessee assumes all liability for, and agrees to indemnify, protect and hold harmless, Lessor, its agents, employees, officers, directors, successors and assigns ("Lessor Group") from and against any and all liabilities, obligations, losses, damages, penalties, claims, actions, suits, costs and expenses, including legal fees and expenses against the Lessor Group in any way relating to or arising out of the rental of the Rental Equipment, Lessee's possession, use, operation, return, maintenance, repair, condition, loss or damage of the Rental Equipment or failure to comply with any and all terms of this Agreement***.

14. ***Each of the following shall be an event of default under the Agreement: (i) failure by Lessee to pay any amounts due under this Agreement when due, (ii) failure by Lessee to comply with any term or provision of this Agreement provided that upon notice Lessee shall have five business days to cure any such failure***, *(iii) Lessee's becoming insolvent, ceasing business operations, bankruptcy, assignment for benefit of creditors, appointment of a receiver, trustee or liquidator, or (iv) Lessee's attempt to sell, transfer, encumber or sublet the Rental Equipment.*

15. ***Upon any event of default as stated under Paragraph 14, Lessor may, at its option, declare the contract in default and pursue all remedies available to it at law and equity***, *including but not limited to: (i) terminating the Agreement,* ***(ii) declaring all rental payments and other amounts due under the Agreement to be immediately due and payable (iii) commencing legal action for all sums due under the Agreement*** *(iv) immediately taking possession of the Rental Equipment wherever located with Lessee expressly hereby waiving any claim for damages associated with such action.*

16. *Lessee agrees that Lessor is entitled to recover reasonable attorney's fees and costs arising from the enforcement of this Agreement and its exercise of any rights and remedies available thereunder.*

18. *The Rental Equipment is, and shall at all times be and remain, the sole and exclusive property of Lessor; and the Lessee shall have no right, title or*

4

> *interest therein or thereto except as expressly set forth in this Lease.*
>
> 22. ***In the event that any amount payable by Lessee under this Agreement are not paid when due, interest shall accrue on such unpaid amounts at the lesser of 15% per annum or the maximum interest rate allowed by law, until such amounts are paid in full.***

(Emphasis added.)

12. The Rental Equipment was delivered by CSA in accordance with the Rental Agreement, and CSA subsequently issued invoices for the Rental Equipment per the Rental Agreement. Integral, however, has failed to satisfy the total amounts owed under these invoices well beyond their respective 30-day terms, and, as such, is in breach of the Rental Agreement, further detailed as follows:

13. Per the terms of the Rental Agreement, CSA provided international delivery service of the Rental Equipment via ground transportation to Laredo, Texas, and then to Tampico, Mexico.

14. The in-transit day rate was $360.00.

15. Upon arrival at Tampico, the day rate (*i.e.*, at the pre-mobilized site) was $600.00.

16. From there, the mobilized at-sea day rate was $1,200.00.

17. Integral then agreed to return the equipment to CSA, at Integral's expense, to Stuart, Florida.

18. However, Integral failed to return the equipment to CSA.

19. The equipment was deployed aboard the vessel M/V DONA JOSE II.

20. In accordance with the Rental Agreement, once it was released from delivery at Tampico, CSA did not have any responsibility for the Rental Equipment.

21. Rather, Integral was solely responsible for the Rental Equipment, including its (Integral's) personnel aboard the DONA JOSE II.

22. Indeed, this is in accord with the nature of the Rental Agreement, which is a "door-to-door"

style contract, whereby, upon delivery, the equipment and its value is the responsibility of the party leasing the equipment (here, Integral) until it is returned and in the possession of the party that owns and leased the equipment (here, CSA).

23. Upon information and belief, the SPI was lost at sea.

24. CSA was not responsible for the equipment once it was delivered, nor did it control operations aboard the DONA JOSE II.

25. Twelve invoices pursuant to the Rental Agreement have been issued by CSA to Integral, both prior to and after the loss of CSA's equipment, attached hereto in Exhibit "B" (which also includes debit memos, an accounts receivable ("AR") invoicing summary table, and invoices for the replacement of the Rental Equipment, discussed below).

26. Under the Rental Agreement, Integral agreed to "pay all rental fees, delivery and prep charges, within 30 days from invoice by Lessor without any right of set-off, abatement or counterclaim." See Exhibit "A," ¶ 5, p. 2.

27. In accordance with the Rental Agreement, Integral is responsible for fees associated with failure to return the Rental Equipment, as well as replacement costs. Under the Rental Agreement, Integral agreed that "[a]t the end of the term of the rental, Lessee shall return the Rental Equipment to Lessor," and otherwise Integral "assumes and bear the entire risk of loss and damage to the Rental Equipment from any and every cause whatsoever." See Exhibit "A," ¶ 10, p. 2.

28. In addition to the above-referenced invoices and because Integral failed to return CSA's Rental Equipment, CSA incurred additional direct costs, including replacement costs for the SPI of $217,180.13, and for the Transponder of approximately $8,960. See Exhibit "B."

29. The total amount owed by Integral was $670,561.83. CSA has received payments of only $48,360.00 against Invoice Nos. 011971, 12020 (partial payment), and 012146. See Exhibit

"B." Thus, the outstanding amount owed by Integral to date is **$622,201.83**.

30. CSA has lost a substantial sum as a result of Integral losing CSA's Rental Equipment and failing to pay the amounts under the above-referenced invoices owed pursuant to the Rental Agreement.

31. Now, Integral is in default, as, under the Rental Agreement, Integral (Lessee) agreed that "failure by Lessee to pay any amounts due under this Agreement when due … shall be an event of default." See Exhibit "A," ¶ 14, p. 2.

32. Under the controlling law, CSA is entitled to full recompense for its own performance of its contractual obligations, along with Integral's failure to perform its contractual obligations, both under the Rental Agreement, as summarized above, plus expenses and interest.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT

33. CSA repeats and realleges each and every allegation contained in paragraphs 1 through 32, *supra*, as if fully set forth herein, and alleges further that:

34. There is a binding and enforceable contract between CSA and Integral as evidenced by the Rental Agreement and invoices attached as and in Exhibits "A" and "B."

35. Integral breached the contract by failing to pay all amounts due thereunder.

36. As a result of Integral's breach and nonpayment of the contract, CSA has suffered and continues to suffer damages in the form of proceeds not paid, interest, costs and attorney's fees.

37. CSA has fully complied with its obligations under the contract.

38. Plaintiff is obligated to pay its counsel a reasonable fee for their services, as well as all costs of collection. Should CSA prevail, Integral is responsible for CSA's attorneys' fees and costs pursuant to applicable Florida statutes and the terms of the Rental Agreement.

## COUNT II
## ACCOUNT STATED

39. CSA repeats and realleges each and every allegation contained in paragraphs 1 through 38, *supra*, as if fully set forth herein, and alleges further that:

40. Integral leased CSA's Rental Equipment under written contract.

41. Integral agreed and promised to pay CSA's invoices for the Rental Equipment pursuant to the Contract's established and agreed upon rates.

42. The total amount owed by Integral was $670,561.83. CSA has received payments of only $48,360.00 against Invoice Nos. 011971, 12020 (partial payment), and 012146. See Exhibit "B." Thus, the outstanding amount owed by Integral to date is **$622,201.83** (which amount continues to increase at the contractual daily rate.)

43. CSA has been damaged due to Integral's failure to pay the invoices.

## COUNT III
## OPEN ACCOUNT

44. CSA repeats and realleges each and every allegation contained in paragraphs 1 through 43, *supra*, as if fully set forth herein, and alleges further that:

45. Integral and CSA entered into a binding agreement that Integral would pay for CSA's Rental Equipment.

46. CSA invoiced Integral pursuant to the parties' agreement as shown in Exhibits "A" and "B."

47. CSA delivered the Rental Equipment to Integral, but Integral failed to pay nearly all of the invoices issued under the Rental Agreement for a total owed amount of **$622,201.83** (which amount continues to increase at the contractual daily rate).

## COUNT IV
## UNJUST ENRICHMENT

48. CSA repeats and realleges each and every allegation contained in paragraphs 1 through 47, *supra*, as if fully set forth herein, and alleges further that:

49. By virtue of CSA's services to Integral and provision of the Rental Equipment, CSA conferred a benefit on Integral of which Integral had and has knowledge.

50. Integral contractually accepted and retained the conferred benefit.

51. Integral was paid by its own client on the project for which it leased CSA's Rental Equipment.

52. Despite CSA's provision of Rental Equipment to Integral, and despite Integral's satisfaction of its own receivables, Integral failed to pay CSA all amounts owed.

53. Integral has been unjustly enriched at the expense of CSA.

54. Integral's retention of the benefit conferred on it by CSA is inequitable since CSA has not been fully compensated.

55. CSA is entitled to damages as a result of Integral's unjust enrichment.

## COUNT V
## BREACH OF BAILMENT

56. CSA repeats and realleges each and every allegation contained in paragraphs 1 through 55, *supra*, as if fully set forth herein, and alleges further that:

57. Pursuant to their obligations as a bailee for hire of the subject Rental Equipment, Integral owed contractual and statutory duties to CSA to carry, bail, keep and care for, protect, and deliver the subject Rental Equipment in the same good order and condition as at the time Integral first accepted custody and control of the Rental Equipment.

58. Integral breached its duties as a bailee for hire by failing to properly carry, bail, keep and

care for, protect, and deliver the subject Rental Equipment in the same good order and condition as at the time Integral first accepted custody and control of the Rental Equipment.

59. As a direct and proximate result of the breach of bailment by Integral, CSA has suffered damages in an amount in excess of **$622,201.83** (and which amount continues to increase at the contractual daily rate).

## DAMAGES

60. CSA realleges and re-avers the allegations contained in the preceding paragraphs as if restated herein.

61. As a result of the actions of Integral, CSA has suffered the following non-exclusive list of past, present, and future damages, in amounts reasonable in the premises:

    a. Loss of contractually-owed invoice amounts;

    b. Loss of CSA's Rental Equipment under the sole care, custody, and control of Integral;

    c. Mitigation costs;

    d. Business income losses and extra expenses;

    e. Loss of economic opportunities; and,

    f. Any and all other applicable damages covered under any of the terms of the Rental Agreement.

**WHEREFORE**, Plaintiff, CSA Ocean Sciences, Inc., respectfully prays that this Court enter a judgment in favor of CSA and against Defendant, Integral Consulting, Inc., in accordance with the Equipment Rental Agreement for all amounts due and owing under the invoices attached hereto in Exhibit "B," along with other contractually-obligated amounts, including, but not limited to, replacement costs for the Rental Equipment (as demonstrated in Exhibit "B"), mitigation costs, business income losses and extra expenses, loss of economic opportunities, any and all other

applicable damages covered under any of the terms of the Rental Agreement, along with reasonable attorneys' fees and costs, plus interest (prejudgment and post-judgment), court costs, and such further relief as this Court deems just and proper.

                              Respectfully submitted,

                              */s/ Edward N. Krakauer*
                              Edward N. Krakauer (FBN: 117797)
                              GALLOWAY, JOHNSON, TOMPKINS, BURR, & SMITH
                              110 East Broward Boulevard, Suite 1890
                              Fort Lauderdale, FL 33301
                              Telephone: (954) 951-2200
                              Facsimile: (954) 951-4400
                              EKrakauer@gallowaylawfirm.com
                              Counsel for *CSA Ocean Sciences, Inc.*